# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JUANISHIA LEE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 15-cv-01802 (APM) |
| DISTRICT OF COLUMBIA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Juanishia Lee, acting on behalf of her minor child, J.K., seeks an award of attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA") for her counsel's successful representation of J.K. during administrative proceedings and in the instant litigation. Plaintiff contends that she is entitled to $103,097.75 in fees and costs. Defendant District of Columbia does not contest Plaintiff's status as a prevailing party under the IDEA or the number of hours spent by her counsel to represent J.K., but does assert that the proposed hourly rates for Plaintiff's counsel are not supported by adequate evidence and therefore are unreasonable. Defendant asks the court to award Plaintiff no more than $77,415.44 in fees and costs.

After considering the parties' submissions and the relevant law, the court grants in part and denies in part Plaintiff's Motion for Attorney Fees. The court awards attorneys' fees and costs to Plaintiff, calculated at an hourly rate of 75% of the USAO Matrix, in the amount of $77,616.50.

## II. BACKGROUND

"The IDEA requires the District [of Columbia] to provide disabled children with a 'free appropriate public education.'" *Eley v. District of Columbia*, 793 F.3d 97, 99 (D.C. Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). A free appropriate public education ("FAPE") requires that each child with a disability receive "special education and related services that" are "provided at public expense" and "in conformity with the [child's] individualized education program." 20 U.S.C. § 1401(9). If the District of Columbia fails to provide a FAPE, the child's parents can file a due process complaint with the District Office of the State Superintendent of Education and receive an administrative hearing. *See id.* § 1415; *Eley*, 793 F.3d at 99. "And if the administrative-complaint route fails, the parents can sue the District [of Columbia] in district court." *Eley*, 793 F.3d at 99 (citing 20 U.S.C. § 1415(i)(2)–(3)).

In this case, Plaintiff's minor child, J.K., became eligible for special services education under the IDEA as a result of severe injuries resulting from a shooting in June 2014. *See* Def.'s Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Summ. J., ECF No. 12, at 4. On June 5, 2015, Plaintiff filed an administrative due process complaint with the State Superintendent of Education's Office of Dispute Resolution, claiming that the District of Columbia Public Schools ("DCPS") had failed to provide J.K. a FAPE as required by the IDEA. *See* Pl.'s Mot. for Attorney Fees, ECF No. 22 [hereinafter Pl.'s Mot.], at 3;[1] Admin. R., Part I, ECF No. 9, Ex. 1, ECF No. 9-1 [hereinafter ECF No. 9-1], at 4.[2] *See generally* 20 U.S.C. § 1400(d)(1)(A). The Hearing Officer agreed, finding that DCPS had failed to develop an Individualized Education Plan, and provide an appropriate placement, for J.K. Pl.'s Mot. at 3; *see also* ECF No. 9-1 at 20–21. Accordingly, the

---

[1] Citations to Plaintiff's Motion for Attorney Fees, which also includes her Memorandum of Points and Authorities, are to the page numbers electronically generated by CM/ECF.

[2] Citations to ECF No. 9-1 are to the page numbers electronically generated by CM/ECF.

Hearing Officer concluded that DCPS had denied J.K. a FAPE for the 2014–2015 school year. *See Lee v. District of Columbia*, No. 15-cv-1802, 2017 WL 44288, at *1 (D.D.C. Jan. 3, 2017) (citing ECF No. 9-1 at 18–21).

Notwithstanding these findings, the Hearing Officer declined to award J.K. any compensatory education. The Hearing Officer so held because Plaintiff "did not offer any evidence at the due process hearing of 'the type and quantum of compensatory education' needed to place [J.K.] 'in the same position he would have occupied but for the [] violations of the IDEA.'" *Id.* at *1 (alterations in original) (quoting ECF No. 9-1 at 24–25). Plaintiff appealed the Hearing Officer's denial of compensatory education by filing the instant action. *See* Compl., ECF No. 1, ¶¶ 1–2.

After briefing cross-motions for summary judgment, the parties agreed that the matter should be remanded to the Hearing Officer to fashion an appropriate award of compensatory education, but they disagreed as to how the Hearing Officer should proceed on remand. *See Lee*, 2017 WL 44288, at *1. Plaintiff argued that the burden to craft an appropriate award fell on the Hearing Officer, while Defendant maintained that Plaintiff was required to come forward with sufficient evidence to support an award. *See id.* The court found that "a hearing officer cannot deny a compensatory education award simply because she is left wanting more evidence." *Id.* Instead, the Hearing Officer has two options under such circumstances: (1) "[s]he can provide the parties additional time to supplement the record," or (2) "she can order additional assessments as needed." *See id.* at *2. Ultimately, the court granted Plaintiff's Motion for Summary Judgment, denied Defendant's Cross-Motion for Summary Judgment, and remanded the matter to the Hearing Officer to develop an appropriate compensatory education award. *See id.*; Order, ECF No. 18. Following the court's order, Plaintiff and DCPS reached a settlement that resolved all issues except

3

the attorneys' fees sought by Plaintiff. *See* Joint Proposed Briefing Schedule, ECF No. 21. The parties' fees dispute is now before the court.

### III. LEGAL STANDARD

To protect the right to a FAPE, "Congress enacted a fee-shifting provision entitling a prevailing party . . . to reasonable attorneys' fees." *Price v. District of Columbia*, 792 F.3d 112, 113 (D.C. Cir. 2015) (internal quotation marks omitted). Under the IDEA, a "court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). An IDEA fee award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). If the court finds, however, "that 'the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for *similar services* by attorneys of reasonably comparable skill, reputation, and experience,' it 'shall reduce . . . the amount of the attorneys' fees awarded.'" *Eley*, 793 F.3d at 99 (emphasis and alterations in original) (quoting 20 U.S.C. § 1415(i)(3)(F)(ii)).

The burden of establishing entitlement to a fee award under the IDEA rests with the fee applicant. *See Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016). The applicant must establish that she qualifies as a prevailing party, document the appropriate hours spent by counsel, and justify the reasonableness of the rate requested. *Cf. Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (explaining burden-shifting in context of a fees petition under 42 U.S.C. § 1988); *Reed*, 843 F.3d at 520–21. Once the applicant has shown that the claimed rate and hours are reasonable, the resulting sum is presumed to be a reasonable fee. *See Covington*, 57 F.3d at 1109. At that point, the defendant can challenge the request for attorneys' fees, but it must do so with specific countervailing evidence. *See id.* at 1109–10.

As noted above, Defendant does not challenge Plaintiff's status as a prevailing party or the hours spent by Plaintiff's lawyers to represent her son. *See* Def.'s Opp'n to Pl.'s Mot. for Attorney Fees, ECF No. 24 [hereinafter Def.'s Opp'n]. Accordingly, the court's discussion focuses only on the parties' dispute as to the reasonableness of Plaintiff's requested hourly rate.

## IV. DISCUSSION

Plaintiff in this case seeks an award of fees for the services of three lawyers: Carolyn Houck, Charles Moran, and Stevie Nabors. Pl.'s Mot. at 5. Houck is a solo practitioner in St. Michaels, Maryland, and Moran and Nabors are with the law firm of Moran & Associates located in Washington, D.C. Pl.'s. Mot., Ex. 4, Decl. of Charles A. Moran, ECF No. 22-6 [hereinafter Moran Decl.]; Pl.'s Mot., Ex. 5, Decl. of Carolyn Houck, ECF No. 22-7 [hereinafter Houck Decl.], ¶ 2; Pl.'s Mot., Ex. 6, Decl. of Stevie Nabors, ECF No. 22-8 [hereinafter Nabors Decl.]. From the lawyers' billing records, it appears that Houck primarily represented J.K. in the administrative proceedings and that Moran and Nabors represented J.K. only in the federal court litigation. *See* Pl.'s Mot., Ex. 2, ECF No. 22-4 [hereinafter Houck Billing Invoice]; Pl.'s Mot., Ex. 3, ECF No. 22-5 [hereinafter Moran Billing Invoice]. Plaintiff seeks an hourly rate of $504 for Houck, $568 for Moran, and $315 for Nabors. *See id.* These rates align with the rates for lawyers of comparable years of experience as reflected in the United States Attorney's Office ("USAO") Attorney's Fees Matrix [hereinafter "the USAO Matrix"]. *See* Pl.'s Mot., Ex. 7, ECF No. 22-9 [hereinafter USAO Matrix].[3]

---

[3] The USAO Matrix is a matrix of hourly billing rates for attorneys and paralegals/law clerks maintained by the Civil Division of the local U.S. Attorney's Office. *See* USAO Matrix n.1. The rates in the matrix "were calculated from average hourly rates reported in 2011 survey data for the D.C. Metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index." *Id.* n.2.

Defendant makes two basic objections to the fees sought by Plaintiff, although the two merge into one. First, Defendant argues that "the proposed hourly rates for Plaintiff's attorney are unreasonable and Plaintiff offers an insufficient factual basis to support these rates." Def.'s Opp'n at 3.[4] Defendant proposes that Plaintiff's attorneys' hourly rates should not exceed 75% of the USAO Matrix rates. *Id.* at 10. Second, Defendant asserts that "Plaintiff's invoice has a number of [travel] entries which are not reimbursable under the IDEA." *Id.* at 3. But that contention actually is no more than a plea that the court apply the 75% hourly rate to the allowable fees for counsel's travel time. *Id.* at 12–13. So, the court considers the two issues in tandem.

To be reasonable, an IDEA fee award must be based on "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *See* 20 U.S.C. § 1415(i)(3)(C). "Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1107). With respect to the last, and perhaps most important, element—the prevailing market rate in the relevant community—the applicant must "produce satisfactory evidence—*in addition to [her] attorney's own affidavits*—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 104 (quoting *Covington*, 57 F.3d at 1109). A fee applicant therefore must come forward with specific, concrete evidence to support her petition.

In this case, Plaintiff attaches to her Motion the following evidence to justify the hourly rates she proposes: (1) her counsel's declarations, (2) their billing invoices, and (3) the USAO

---

[4] Citations to Defendant's Opposition, which also includes its Memorandum of Points and Authorities, are to the page numbers electronically generated by CM/ECF.

Matrix. *See generally* Pl.'s Mot., Exs. 2–7, ECF Nos. 22-4–22-9. Additionally, in her brief, she asks the court to consider, by reference, (1) a market survey conducted by Dr. Laura Malowane, an economist, on behalf of the U.S. Department of Justice in a different IDEA case, *see* Statement of Interest of U.S., *Eley v. District of Columbia*, 201 F. Supp. 3d 150 (D.D.C. 2016), ECF No. 49 [hereinafter U.S. Stmt.], Decl. of Dr. Laura A. Malowane, *Eley*, 201 F. Supp. 3d 150, ECF No. 49-1 [Malowane Decl.]; and (2) two IDEA cases in this District in which courts awarded full USAO *Laffey* rates,[5] *Merrick v. District of Columbia*, 134 F. Supp. 3d 328 (D.D.C. 2015), and *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 216 (D.D.C. 2016). *See* Pl.'s Mot. at 6–7. That, in sum, is the evidence submitted with her fees application.

Plaintiff also submits additional evidence with her reply brief, but the court declines to consider it. Plaintiff offers five declarations from other IDEA practitioners, *see* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Attorneys' Fees, ECF No. 26 [hereinafter Pl.'s Reply], Exs. 1–5, ECF Nos. 26-2–26-6, and she asks the court to consider evidence submitted in three other cases in this District, *id.* at 5. The court will not consider either the evidence attached to her Reply or the evidence in the cases she cites, however, because Plaintiff offers it for the first time with her reply brief.[6] *See McAllister v. District of Columbia*, 689 F. App'x 646, 646–47 (D.C. Cir. 2017) (holding that district court did not abuse its discretion in IDEA case by declining to consider affidavits

---

[5] Before 2015, the USAO annually established a fees matrix based on updated hourly rates that originated from the case of *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983). *See* USAO Matrix n.4. The USAO ceased that practice starting with the 2015-2016 year, *see id.*, and, for that reason, the current USAO rates matrix is known as the USAO Matrix, instead of the USAO *Laffey* Matrix.

[6] To be fair, one of the two cases cited for the first time, *Wimbish v. District of Columbia*, 251 F. Supp. 3d 187 (D.D.C. 2017), was decided after Plaintiff submitted her opening brief. The other case cited in her Reply, but not cited in her Motion, is *Shaw v. District of Columbia*, 210 F. Supp. 3d 46 (D.D.C. 2016). The case that is cited in both Plaintiff's Motion and her Reply is *Flood v. District of Columbia*, 172 F. Supp. 3d 197 (D.D.C. 2016). Although the court declines to consider the actual evidence presented in those cases, the court does discuss those cases below.

7

submitted for the first time with the plaintiffs' reply brief).[7]  It would be fundamentally unfair to Defendant for the court to consider Plaintiff's new evidence, as Plaintiff's late submission denies Defendant the opportunity to rebut it with specific proof of its own.  *See Covington*, 57 F.3d at 1107; *cf. Durant v. District of Columbia Gov't*, 875 F.3d 685, 695 (D.C. Cir. 2017) (noting the unfairness of considering an argument raised for the first time in a reply brief).  Accordingly, the court proceeds to evaluate only the evidence offered with Plaintiff's fee application.

### A. The Attorneys' Billing Practices

The court starts with Plaintiff's attorneys' billing practices.  *See Eley*, 793 F.3d at 100. That factor requires the applicant to show her attorney's "custom" with respect to billing in IDEA cases.  *Covington*, 57 F.3d at 1108.

On that score, the proffered attorney declarations are quite thin.  Houck says only that she "match[es] [her] hourly rates to those in what is known as the [USAO] attorney's fees matrix." Houck Decl. ¶ 4.  Presumably that is Houck's practice in IDEA cases, but she does not say so specifically.  Moreover, assuming she is referring to IDEA representations, Houck does not say

---

[7] Additionally, like the declarations in *McAllister*, the additional declarations submitted by Plaintiff do not mention any specific rates that the declarants charge IDEA clients; rather, the declarations largely chronicle the challenges facing practitioners in IDEA litigation because of the District of Columbia's fee practices.  *See* 689 F. App'x at 646–47; Pl.'s Reply, Exs. 1–5, ECF Nos. 26-2–26-6.  Moreover, to the extent that these declarations offer testimony to show that below-USAO Matrix rates will make it difficult to attract competent counsel in IDEA cases, Plaintiff only raises that argument in a cursory manner in her Motion, *see* Pl.'s Mot. at 7–8, and in any event offers little evidence to support it with her Motion, *see id.* (claiming "[b]ased on declarations of IDEA practitioners" that "it is clear that attorneys accept IDEA representation due to the prospect of recovering the USAO matrix rates," but only offering Moran's relatively neutral observation that that IDEA practitioners "do the work because it is fulfilling and because they care about the subject matter" and that "the Court's awarded sub-market rates are not so low that . . . attorneys refuse to take these cases, but they do not attract a sufficient number of competent counsel," Moran Decl. ¶ 22). Accordingly, the court declines to consider that argument and the new declarations submitted in support of it.  *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (declining to address an argument raised in "cursory fashion" and supported only by "bare-bones arguments" (internal quotation mark omitted)); *cf. Reed*, 843 F.3d at 524 (declining to address argument that "rates awarded by the District Court are insufficient to attract competent counsel" raised for the first time on appeal and made without any "substantial or compelling evidence").

whether her practice of tying her rate to the USAO Matrix is only for contingency fee clients or all clients, including those who pay their way.

Moran's and Nabors' declarations are only slightly more detailed. Moran explains that his firm's billing practice since 2014 has been to adjust rates according to various fee matrices. Moran Decl. ¶¶ 7–8, 23. Before January 1, 2014, the firm pegged its rates to the USAO's *Laffey* Matrix, but after that date set them according to the Legal Services Index-based *Laffey* Matrix. *Id.* ¶ 8. After the Circuit decision in *Eley*, however, Moran says that his firm switched back to the USAO *Laffey* Matrix to "ensure that our fees were based on 'rates prevailing in the community.'" *Id.* ¶ 23 (quoting 20 U.S.C. § 1415(i)(3)(C)); *see also* Nabors Decl. ¶ 4. Today, according to Moran, the firm aligns its rates with the USAO Matrix rates. Moran Decl. ¶ 24; *see also* Nabors Decl. ¶¶ 5–6.

Equally important is what Moran and Nabors do not say. Like Houck, neither lawyer details whether their firm uses the USAO Matrix rates for hourly-paying IDEA clients. Although Nabors attests that, in 2017, he "ha[s] been paid [USAO Matrix] rates by clients on matters concerning education law, employment law, and labor rights," Nabors Decl. ¶ 6, that statement does not distinguish between judicial fee awards and hourly-paying IDEA clients. Thus, the court has no evidence before it that any of Plaintiff's counsel charge, and receive from, their hourly-paying IDEA clients the USAO Matrix rates.

In summary, Plaintiff's counsel attest to aligning their rates with the USAO Matrix in IDEA cases, but offer no more specifics about their billing practices.

### B. The Attorneys' Skill, Experience, and Reputation[8]

Next, the court considers the proof submitted of Plaintiff's attorneys' "skill, experience, and reputation." *Eley*, 793 F.3d at 100. On this factor, the evidence is limited.

Other than reciting her educational background, Houck says nothing about her experience in IDEA cases. Houck Decl. ¶ 5. She does not disclose, for instance, the number of years she has worked on IDEA cases in the District of Columbia, the percentage of her practice devoted to IDEA cases, nor the percentage of her IDEA practice that is paid clients versus contingency-fee cases. In short, the court knows little about Houck's "skill, experience, and reputation" other than her educational background and that she successfully represented J.K. in his administrative proceedings.

The court knows even less about Nabors. His declaration contains no information about his education or his experience or practice with regard to IDEA cases. The most the court can decipher about Nabors is that he successfully represented J.K. in this case, he has been with Moran & Associates since at least 2014, and he likely has done some IDEA work in the District of Columbia from 2014 until the present. Nabors Decl. ¶¶ 2–4.

Plaintiff offers more substantive information about Moran. Moran has been a member of the District of Columbia bar since 1968 and has practiced in the field of "special education law" for approximately 25 years, "especially" on matters brought under the IDEA. Moran Decl. ¶ 5. It is also apparent that Moran has significant experience with the D.C. Attorney General's office in litigating IDEA cases in the District of Columbia. *Id.* ¶¶ 9–20.

---

[8] Plaintiff asserts in her reply brief that, through Defendant's silence in its opposition brief, Defendant conceded the skill, reputation, and experience of Plaintiff's counsel. Pl.'s Reply at 2. The court disagrees. Defendant's general contention is that Plaintiff has not presented adequate evidence to carry her burden of establishing the reasonableness of her rates requested. *See* Def.'s Opp'n at 4–10. The Circuit has made clear that a key element of that inquiry is the attorney's skill, experience, and reputation. *See Eley*, 793 F.3d at 100. Accordingly, the court considers the evidence presented concerning that factor.

At bottom, Plaintiff has offered some evidence about her lawyers' skill, experience, and reputation, but she unquestionably could have presented more.

### C. Prevailing Market Rate in the Community

Last, but far from least, the court arrives at the contentious issue of the prevailing market rate for similar services in the community. Although the D.C. Circuit has observed that determining the prevailing market rate is "inherently difficult," *Eley*, 793 F.3d at 100 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), the court's most recent published decision on IDEA fees litigation—which neither party cites—provides helpful guidance. In *Reed*, the Circuit explained that litigants have relied on "two separate, but inter-related, approaches to providing evidence of prevailing market rate." 843 F.3d at 521. First, a litigant can show that IDEA litigation "fall[s] within the bounds" of "complex federal litigation" and therefore the USAO *Laffey* Matrix—now the USAO Matrix, *see supra* note 5—presumptively sets forth the prevailing market rate for IDEA representation. *Reed*, 843 F.3d at 521, 524–25. Put differently, if an IDEA practitioner shows that IDEA litigation qualifies as "complex federal litigation," then absent compelling contrary evidence, the USAO Matrix rates will be deemed reasonable. Alternatively, a fee applicant can "establish the prevailing market rate by providing evidence of the fees charged, and received, by IDEA litigators." *Id.* at 521. Importantly, the Circuit has said that this second way of establishing the prevailing market rate "is *not* conceptually linked to the *Laffey* Matrix." *Id.* (emphasis added). In other words, in the absence of a finding that IDEA cases command the same rates as complex federal litigation, the "*Laffey* Matrix rates are *irrelevant* to the prevailing-rate determination." *Id.* (emphasis added) (citing *Price*, 792 F.3d at 117 (Brown, J., concurring)). So, according to *Reed*, if a litigant is intent on seeking a fee using the USAO Matrix, she must

11

show that IDEA cases are complex federal litigation, but if the litigant fails to do so, she still may succeed by offering proof of the prevailing market rate that is independent of the USAO Matrix.

Perhaps because she does not cite *Reed*, Plaintiff has not taken either of these two paths. First, although two Circuit judges have expressed their view that IDEA cases categorically are complex federal litigation, *see Reed*, 843 F.3d at 529 (Tatel, J., concurring); *Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring), the law of the Circuit requires fees applicants to demonstrate complexity on a case-by-case basis, *see Reed*, 843 F.3d at 525 (noting that the court was not "rul[ing] out the possibility that future fee applicants may be able to demonstrate that IDEA cases are 'complex federal litigation,'" but adding that "[i]t will not be easy"). Here, Plaintiff has not offered *any* evidence to show that IDEA cases "fall within the bounds" of "complex federal litigation." *See* Houck Decl.; Moran Decl.; Nabors Decl. Moreover, while some judges in this District have applied the USAO *Laffey* Matrix in the "unusual case" where the applicant is able to show that *her* particular case is "unusually complex," *see Cox v. District of Columbia*, 264 F. Supp. 3d 131, 143 (D.D.C. 2017) (citing cases), Plaintiff makes no attempt to show that the instant case was "unusually complex" in any respect. All Plaintiff provides is a brief synopsis of this case's procedural history and its outcomes, without more. *See* Pl.'s Mot. at 3–4. Accordingly, Plaintiff has not shown that the USAO Matrix rates presumptively apply.

Having failed to establish that IDEA litigation qualifies as complex federal litigation, Plaintiff's remaining option is to demonstrate the prevailing market rate based on "the fees charged, and received, by IDEA litigators." *Reed*, 843 F.3d at 521. None of the evidence that Plaintiff relies upon, however, accomplishes that task.

Starting with Plaintiff's counsel's declarations, each lawyer says that he or she now charges the USAO Matrix rate. *See* Houck Decl. ¶ 4; Moran Decl. ¶ 24; Nabors Decl. ¶ 5. Moran and

Nabors add that their firm's managing partner has twice surveyed fellow IDEA practitioners and they too charge rates consistent with the USAO Matrices. Moran Decl. ¶¶ 23–24; *see also* Nabors ¶¶ 4–5. But after *Reed* those representations carry little weight absent a showing that IDEA litigation is complex. Additionally, the survey results noted by Moran and Nabors are too indefinite, as their representations lack any supporting details about the rates IDEA practitioners actually charge and receive. Plaintiff's counsel's declarations therefore do not aid her cause.

Next, Plaintiff points to the market survey conducted by Dr. Laura Malowane in the *Eley* case post-remand. Dr. Malowane made two relevant findings. First, based on a review of 77 IDEA cases decided within a five-year period in this District Court, she found that the court awarded fees at or below the USAO *Laffey* Matrix rates or not at all in 93% of those cases. *See* U.S. Stmt. at 3, 5–6; Malowane Decl. ¶ 62. Second, using a 2014 national billing rate survey as her starting point, Dr. Malowane determined that the USAO *Laffey* Matrix was in line with or even exceeded the median rates in the District of Columbia market for "federal litigation." *See* U.S. Stmt. at 9–13; Malowane Decl. ¶¶ 18–25. Neither of those conclusions, however, helps Plaintiff in this case. Although Dr. Malowane's case survey showed that courts in this District typically award fees in IDEA cases at or below the USAO *Laffey* Matrix, more than three quarters of those cases involved fee awards *below* the USAO *Laffey* rates. *See* Malowane Decl., Ex. 7. Thus, Dr. Malowane's case survey actually undermines Plaintiff's position that the full USAO Matrix reflects the prevailing market rate in IDEA cases. Additionally, Dr. Malowane's observation that the USAO *Laffey* Matrix is in line with "federal litigation" rates in the District of Columbia carries little weight because Dr. Malowane's methodology involved equating "federal litigation" with a catch-all "other litigation" category used in the survey. *See* Malowane Decl. at 8 n.8. The prevailing rate

in the District of Columbia for a generic "other litigation" category tells the court nothing about the prevailing rate specific to IDEA cases in this jurisdiction.

Finally, Plaintiff cites post-*Eley* cases in this District granting full USAO Matrix rates, but none are persuasive. In each of those cases, courts relied in large part on affidavits from IDEA practitioners to establish the prevailing market rate. *See, e.g.*, *Wimbish v. District of Columbia*, 251 F. Supp. 3d 187, 192–93 (D.D.C. 2017) (presenting nine affidavits from IDEA practitioners, in addition to those of her own counsel); *Shaw v. District of Columbia*, 210 F. Supp. 3d 46, 49–50 (D.D.C. 2016) (relying on four affidavits to find that IDEA cases are comparable to complex civil litigation); *Flood*, 172 F. Supp. 3d at 212 (presenting six affidavits from IDEA practitioners, including her own counsel); *Merrick*, 134 F. Supp. 3d at 340 (relying on seven affidavits from IDEA practitioners attesting to the complexity of IDEA litigation and that USAO *Laffey* rates are appropriate in those cases). Here, by comparison, Plaintiff only offers the statements of her own counsel, which is inadequate. *See Eley*, 793 F.3d at 104. More importantly, the probative value of the other-practitioner declarations in the cited cases is questionable in light of *Reed*. By and large, those declarations state, without elaboration, that IDEA practitioners bill time at the USAO Matrix rates or higher. *See, e.g.*, *Wimbish*, 251 F. Supp. 3d at 192; *Flood*, 172 F. Supp. 2d at 212. But post-*Reed*, absent a showing that IDEA litigation is complex, "*Laffey* Matrix rates are *irrelevant* to the prevailing-rate determination." *Reed*, 843 F.3d at 521 (emphasis added) (quoting *Price*, 792 F.3d at 117 (Brown, J., concurring)). Therefore, declarations that state no more than that the practitioner's billing practice is to tie her rates to the USAO Matrix—like those submitted by Plaintiff's counsel here—are of little probative value in fixing the prevailing market rate. *See Eley*, 793 F.3d at 100–01 (stating that because fees matrices are generally "somewhat crude," "a fee applicant supplements fee matrices with other evidence such as surveys to update the[m];

affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement" (alterations in original) (internal quotation marks omitted)); *Cox*, 264 F. Supp. 3d at 140 ("Merely alleging the fees charged by other practitioners does not provide convincing evidence of the prevailing market rate. Plaintiffs must demonstrate the rates that practitioners actually collected from clients or that courts awarded those practitioners." (internal citations omitted)). Finally, Plaintiff's reliance on recent decisions awarding full USAO Matrix rates is offset by Dr. Malowane's survey showing that a significant majority of cases have awarded below the full USAO *Laffey* Matrix rates in IDEA cases. As one judge of this District Court recently observed: "[B]ased on recent case law from this district, the 'prevailing rate' for IDEA fee awards in this community seems to be seventy-five percent of *Laffey* Matrix rates." *Cox*, 264 F. Supp. 3d at 145. Thus, in the end, having done little more than show that her lawyers' practice is to harmonize their rates to the USAO Matrix, the court concludes that Plaintiff has not established the prevailing market rate for IDEA cases in the District of Columbia.

\*   \*   \*

In summary, having considered the evidence submitted by Plaintiff concerning her (1) attorneys' billing practices; (2) their skill, experience, and reputation; and (3) the prevailing market rates for IDEA representation in the District of Columbia, the court finds that Plaintiff has not carried her burden to show the reasonableness of the hourly rates she requests. Having failed to establish that the full USAO Matrix rates are reasonable, the court will award fees in this case at 75% of the USAO Matrix rate, as the Circuit affirmed in *Reed*. *See* 843 F.3d at 523, 527. Accordingly, the court awards fees at an hourly rate of $378 for Houck, $426 for Moran, and

$236.25 for Nabors. The court also sets Houck's hourly rate for travel time at $189.[9] *See, e.g., Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 77 (D.D.C. 2011) (noting, in IDEA case, that "[i]n this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate" (internal quotation marks omitted)); *cf. Cooper v. U.S. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994). The total fees and costs award is as follows:

| | |
|---|---|
| Moran and Associates: | $32,330.95 ($31,794.45 in fees and $536.50 in costs) |
| Carolyn Houck: | $45,285.55 ($43,893.30 in fees and $1,392.25 in costs (including travel time)). |
| Total: | $77,616.50[10] |

## V. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiff's Motion for Attorney Fees and awards $77,616.50 in attorneys' fees and costs under the IDEA.

A separate Order accompanies this Memorandum Opinion.

Dated: January 12, 2018

Amit P. Mehta
United States District Judge

---

[9] The court rejects Defendant's suggestion that Houck billed an excessive amount of travel time by traveling to the administrative due process hearings from her office in Maryland, *see* Def.'s Opp'n at 13. *Cf. Coates v. District of Columbia*, 79 F. Supp. 3d 42, 51 (D.D.C. 2015) (finding it "inappropriate to require the District of Columbia to pay . . . large fees to [counsel] for the hours billed by her attorney for travel time from Virginia to the District," and thus holding "attorney travel time will be reimbursed at one-half the hourly rate"); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 54 (D.D.C. 2011) (compensating out-of-state counsel for travel time at half the hourly rate, albeit in section 1988 fees case).

[10] The court arrived at the total fees amount by multiplying by .75 the total fees reflected on the two billing statements submitted by counsel. *See generally* Houck Billing Invoice; Moran Billing Invoice.